The appellate court of Illinois is reconvened. Thank you. Please be seated. First case this afternoon is case number 4-16-0844, which is consolidated with 4-16-0846. Roland, is it Thoma? Yes, Your Honor. Okay. Appellant v. Eric, and then the pronunciation? Hjerpe. Hjerpe. Okay, thank you. Appearing for appellant are attorneys Richard Stites and Ryan Tackett. It's my understanding, Mr. Stites, you are not going to be arguing today? That's correct, Your Honor. All right. And counsel, the pronunciation of your last name? Tackett, Your Honor. All right, very good. Thank you. I'm sorry. This case has an abundance of names that need help with. And for the appellee is attorney William Anderson. Mr. Tackett, are you ready to proceed? Yes, Your Honor. All right, you may. Thank you, Your Honor. May it please the court Opposing counsel, today we're here for an appeal that is a prime example of the reason that the Uniform Arbitration Act has within it provisions to vacate an arbitration board. We have two instances here, or a couple of instances here where the panel exceeded their authority under with respect to the arbitration. And then they also failed to act as a neutral fact finder in this arbitration. The Uniform Arbitration Act also carves out an exception wherein the award may be corrected or modified if there are evidence calculations on the base. That is an alternative theory that we have put forth in our briefs. The additional element that we are here to discuss is the error of the trial court in awarding attorney's fees for really appellee's opposition to our motion to vacate at the trial court level. What we would suggest is an improper construction of what the Integrated Business and Employment Agreement states in the damages provision. What we have as far as a record in this case goes much further than simply a transcript of the case. We have a lengthy, detailed arbitration award which sets forth what the panel interpreted the evidence being presented at That's important because we have the ability to review what the award was and see exactly how the panel interpreted that information and what their findings were when they received that information. The panel went through great lengths to put out a very lengthy arbitration award. I believe it was around 30 pages. That is going through the facts as they had seen them, going through what they had considered as testimony and evidence on both sides of the pendulum. But it's within this award that it demonstrates on multiple occasions when the panel exceeded its powers. Counsel, your arguments are essentially as if we were reviewing a decision of the trial court. But we're not. We're reviewing the decision of the arbitrators and as this court has written our authority to do that review is very limited. We have pointed out that maybe because they're mistaken or wrong or applied the wrong law, it doesn't matter. See, that's why we have trial courts. But your client said no, I want arbitration. And he got it. So why should we rescue him from his choice? Correct, Your Honor. While although the case was litigated through arbitration, and I understand exactly what you were saying with respect to the court's not so much ability but their desire to go in and overturn an arbitration award. What we have here is we have a panel that clearly exceeded what their powers were. Well, your argument seems to be they exceeded it because they got it wrong. That can't work. That they might be mistaken. That they used bad judgment. That they misunderstood even what was there before them. That's not a sign of good faith. They might be stupid. But that's what you chose. So why, again, why should we be concerned with bailing out your client? And Judge, we're not asking for a bailout. We are asking that the court review the burdens that are placed on each party. And the arbitration panel acknowledged what those burdens were and found exactly that the appellee did not meet those burdens and decided to go further. Decided to take it a next step. At three different levels in the loss-profit damages, the burden is that the person claiming those damages must show or must establish those with reasonable certainty and must show that it was the defendant's wrongful conduct that caused those damages. The panel articulates quite clearly that Jerphy, who is the appellee in this case, actually admitted at the arbitration that he could not tell if it was Thoma's actions or for some other reason. And there was evidence provided at that arbitration that it was for other reasons. Sounds like they made a mistake. In our decision in the Hoverlick, we wrote, the reviewing court cannot set aside an arbitration award because of errors in judgments or mistakes of law or fact. Meaning, we don't care that they made a mistake. Because your guy signed up for arbitration and he got it. You correctly cite to the statute here and identify the occasions upon which the court shall vacate an arbitration award. And that would be in instances of corruption, fraud or other undue means, partiality by an arbitrator, where the arbitrators have exceeded their powers, where they refused to postpone the hearing or where there was no arbitration agreement. And you've identified two potential bases for setting aside the arbitration award. One being where the arbitrators have exceeded their powers and then secondly where it's evident that there was partiality by the arbitrator. Can you just specifically identify what the record shows in regards to partiality and that they exceeded their powers? Yes, Judge. I believe when we look at the record, the arbitration award as a whole, we've identified what the burdens are on the party. The panel has established that the appellee did not meet those burdens and regardless that the appellee did not meet those burdens, they went forward and created evidence. If you look to the calculations that the panel devised, which was on the burden of the appellee to establish, the panel created the starting numbers for how we would calculate loss-profit damages. But how do we really know that? Because the only reference made to the evidence is to the arbitration award itself. Are you saying that the record demonstrates that the arbitration decision sets forth every bit of evidence that was presented at the time of arbitration? Because you have to establish, your argument here is that the arbitrators went beyond the evidence presented. In order to do that, it would seem you would have to have the evidence that was presented and to be able to say to the court, there was no such evidence presented. But you're dealing with a vacuum here. There's no record. Your Honor, I would respond with the arbitrators put forth this lengthy arbitration award and within that award they had articulated what evidence they took into consideration. And while there may not be a show of the exhibits that were submitted to the arbitration panel, they do articulate what they looked at in order to develop their award. And in this instance, the only individual that provided expert testimony on behalf of the appellee was the appellee himself. And the panel went to great lengths to explain why that individual was not qualified to render loss-profit damages opinions, that his methodology and calculations were unreliable. And the panel went so far as to say that we disagree with or I apologize, I don't want to the panel actually said that they do not accept Jerby's damages calculations. Again, that's the burden that is on the appellee. That right there says that the panel said, you know what, he's tried to provide us with what the calculations are. He's failed to do so. However, we're going to look the other way on that. We have experience in this issue. We'll go ahead and lay out what the calculations should be. We'll go ahead and fill in the blanks for these values. And that's what the heart of our argument is here. The panel put forth everything that they had in this arbitration award, and we've tried to, we've tried extremely hard just to keep it to what that award says. And when the panel comes out and expressly states that Jerby made admissions that he did not know and that he did not know if clients left because of Toma or not, that directly affects one burden. On the issue of we do not accept Jerby's damages calculations, that burden is again on Jerby. The panel is expressly stating that the appellee has failed to meet that burden. And even so, they've gone further and continued on with the lost profit damages, filling in their own numbers and values. I know you came in late in the game and you have to deal with the landscape as it exists at the time. There's no doubt this is a detailed arbitration decision here. But it seems to me that  you would have to have the ability to point to the record, point to the evidence that was actually presented in order to make that argument complete. And is there any other way to do that other than actually  the exhibits that were presented? Your Honor, I don't believe that there is a way other than to look at the award. And again, the award is what the panel had used in their interpretations in going forward. If there was some instance wherein the appellee had offered the damages calculations by a written document, the panel went to great lengths to explain what they were heard and try to articulate in their narrative or their decision how that came about. So while I have to concede that yes, we were not the counsel at the arbitration, we are not aware of exactly what records were submitted, the arbitrators in their decision do a very good job of putting forth what it is that they've relied on and also improperly relied on. Thank you. You've addressed my question. Thank you. So judges, going back to the brief itself, and we had touched on this briefly, the panel unilaterally established a starting point for lost gross revenues, the unilaterally determined saved costs, unilaterally determined actual revenues, the attrition rate, the over-inclusions. These were all the burden of Jerby to establish, and he failed to do so. The panel articulated that within their decision. The response of the appellee is that the panel looked at everything and came to a conclusion, but they do not even acknowledge the burdens that they bore during the arbitration. The arbitration does not remove a party's burden. Simply taking the case through arbitration as opposed to the trial court does not lessen the burdens that the parties have. Arbitration does not allow the fact finder, even if they are aware of the area or have expertise and history in the area, to remove the burden of someone else and undertake it for themselves in order to come up with a lost profit damages number. And the arbitration aspect of this does not allow the panel to come in and simply create evidence as they have done and as is pointed out in the arbitration award. For those reasons, we feel that the panel clearly exceeded its powers and failed to act as an impartial, neutral fact finder in this arbitration. I just want to touch briefly on another smaller issue before the clock starts winding down, but the issue of attorney's fees. The trial court constructed the Integrated Business Acquisition and Employment Agreement, the provision for attorney's fees, the word action. They had felt that the word action met our motion to vacate. As we pointed out in our briefs, a motion to vacate is not an action. The underlying actions were the complaints that were filed. A motion to vacate is simply a continuation of the proceeding, much like an appeal. An appeal is a continuation of the proceeding. The trial court improperly constructed that aspect of the Integrated Business Acquisition and Employment Agreement and found that our motion constituted an action to which attorney's fees should be awarded, and we would ask the court to reverse that decision. The final issue that I wanted to discuss is, and this is for the purposes of an alternative argument to our motion to vacate, we feel that the appropriate action here is to vacate the arbitration award, but with respect to the values and the calculations that the panel had put forth, there are a couple of aspects to take into consideration. With respect to attrition, again, this was the burden of JRP to present evidence and establish what all these values would be. The panel defined its gross revenue loss, and even if we take, just for argument's sake at this hearing, that the number the panel devised is appropriate, we can look through what the panel's findings were with respect to the award. The panel does not consider attrition as it goes from year to year. In 2012, the panel finds that gross revenue loss is $297,622. That's the same number that they used for 2013, wherein we have attrition of, as the panel put, 10% and over-inclusions of 10%. That would reduce the number in the following year. It would not stay the same, and that's an evident miscalculation on the face of the panel's award. In addition, the only year that the panel deducts revenue actually received is in 2012, and that's again a burden that is on JRP to establish what his actual revenues are. Just looking at it in a logical sense, if we only have a 10% or a 5% attrition, there's going to be actual revenues received. It shouldn't be my client's burden to show that there are actual revenues received. It should be the burden of the party that is claiming these lost profit damages to show we didn't receive any actual revenues. What the panel had done is they had said, okay, we've got a year of, or a book from 2012 that shows that we've got actual revenues received. We don't have any other evidence, so we're just going to call it zero. And again, looking at it logically, if we have a 5% attrition rate, that number is going to simply be reduced by the 5%. This just again shows and demonstrates that the panel went above and beyond what its authority was. They wanted to come up with a lost profit damage number, and they did so by calculating it on their own. If what we've done, and I apologize for the length that it is in the brief, we wanted to try and lay this out as to show exactly what their methodology was and where the took five or six pages. But if we look to what the tables show, and simply what the tables show, gross revenue loss should go down each year. It should go down and be whatever the gross revenue loss from the prior year was, minus the attrition and over-inclusions. That should be the starting point for the next year. So even if we are going to say you know, Jerby was able to establish lost profit damages, we're going to move into the calculation. The panel even had errors on its calculations. What we have put forward is what the correct calculations are, and we would ask that the court review those calculations and modify and correct the arbitration award as set forth in our calculations example. If there are no other questions, I'll wait until after. Thank you Judge. Mr. Anderson, response? Good morning, gentlemen. Thank you for letting me have the time to come in and present this case to you and honorable counsel. You know, quite frankly, I think the court's got a pretty good handle on this case. My concerns that I was going to raise have pretty much been raised by the court already. One thing I found interesting was when you asked a question, is there any other way other than a record, a transcript that this case could be examined? Yes, there is. And counsel had an opportunity to take advantage of it. Now, I was the counsel for arbitration. I've been in this case since 2011, and granted both legal counsel and both parties agreed not to create a record, agreed not to have a court reporter. We all understood this arbitration was going to be final, and that's the way we proceeded. We all know how limited judicial review is of an arbitration award, and there was really no point in a record.  was discharged, this appeal was filed, and then the notices from AAA could start coming in about destroying their records. All these were ignored. The records were destroyed. The notes were destroyed. The exhibits were gone. All of this could have been preserved and given to you. A bystander's report could have been asked from each of the arbitrators. One could have been given from trial counsel. We could have gotten them from witnesses. We could have recreated a record if anybody was really serious about it. If they had really wanted you to see all of the core exhibits and the core information that came in, it could have corrected all of the mistakes in fact that I feel have occurred in some of the interpretations of the 30-page order that the panelists gave us. Obviously, these three panelists gave a lot of thought and a lot of effort, conducted a full week-long trial, looked at thousands of pages of exhibits, cross-examined over 19 different witnesses, and presented a reasoned opinion. As the Court has said, Mr. Thoma doesn't like that decision. We don't like parts of that decision either. I don't like the fact that they get interest and we don't. I think we got screwed on that call. I didn't file a cross-appeal. Guess what? Because I feel the decision is final. I don't have the right to come in here and complain about it, but I'm just saying. Mr. Anderson, both counsel would say fine. I'm not sure how the case is pronounced. HAWRELAK. H-A-W-R-E-L-A-K. That case says that the Court cannot set aside an arbitration award because of errors in judgment or mistakes of law or fact as Justice Steiffen indicated earlier. It does, however, say that a party seeking to vacate an arbitration award can point out gross errors of judgment in law or gross mistakes of fact and that a reviewing court can set aside an arbitration award in that circumstance. So if you had an arbitration award that said something along the lines of we find that an award is due party X based on a combination of two factors. Factor A, which we calculate to result in $100,000 in damages, and Factor B, which results in $150,000 worth of damages for a combined total of not $250,000 but $5,000,000. That's apparent on its face that that's a mistake. The reviewing court could correct it. You acknowledge that? Counsel is looking at this award and saying there is a mistake that is apparent on its face. Can you address that? Because I think nowhere possible is this you know, this isn't a case of you take 2 times 3 and you get 5 or you add 7 and 8 and you get 12. This isn't a case where they put a comma in the wrong position and they obviously made a mistake or they wrote down we'll apply 5% but then when they did the calculation they put in 50%. This isn't like that. This is a situation where they're claiming, okay, you should have used a different formula in your calculations. You should have applied this factor in and taken this factor out and taken this factor and moved it over here. That's not what the law provides. The law provides that if I say, okay Janet you get the property on Front Street and Joe you get the property on Back Street, but yet it's clear from the legal descriptions that were attached that we somehow switched them when we did it in a simple error. Well, you fixed that. Because, you know, the idea is to do justice to the arbitration process in the award. Not to strip it and say without any evidence that you guys didn't do it right. They're trying to claim that you didn't do this right. And to get into all those arguments, I've got to get into things like attrition rates, growth rates. We haven't even discussed growth rates at this accounting firm. This was a growing, thriving accounting firm. And you have to balance the growth rate against the attrition rate and the two experts disagreeing on what the attrition rates are and the amortization rates and how things should be carried forward. They want to tell you that we only had one expert. We had two. We had Mehal and who we turned into our own expert at trial and then we had Jerby. And then we had a whole room full of experts because half the people that testified were accountants and testified to these issues of what was going on. And they may not all be reflected in the final judgment, but practically everybody in that room other than the handful of lay witnesses was an expert in this area that came in and testified and educated the panel on all of these issues. There's no, when it takes five pages to explain the problem with a number, it's not an error that's easily determinable on the face of a document as a simple mistake that needs to be corrected to do justice to the arbitration award. And I believe that's what the law is provided for so that if somebody makes an open, obvious error, it can be fixed the way it should be so that somebody can take four years, five years of work, a week's worth of trial, thousands of exhibits and untold testimony pages and then turn around and rearrange it and recalculate it and redo it because somebody doesn't like the result. I might not like part of these results, he might not, but we can't change it now. All we can do is say, oops, somebody made a mistake, can we fix that? And I don't think that exists here. I don't think there's anything like that. I mean, I don't know if that answers your question on the subject, but to me, this case can't even be considered seriously without a record on the appeal. And I don't know why some sort of record wasn't given to you when they had the ability to do that. You might not have had a transcript, but  you had the ability to produce bystander reports and ability to help create a record, and I can only assume that by not giving it to you, they didn't want you to have it. And I believe that the reason they didn't want you to have it is because obviously this whole transcript and record of this entire appeal would have shown that it was a hotly contested case, that it was very carefully considered, that every argument that was made, every exhibit that was tendered was received, every witness that was proposed was cross-examined and interviewed, and everything that we gave these people was considered. And then they gave us their decision. And I guess the only question, and as to the issue of attorney fees, I don't, I mean, we've got an integrated business agreement which provides that the successful party can receive attorney fees. We've got a monetary judgment. Obviously a judge can interpret that as us being a successful party. Us going in and collecting that is still part of the same proceeding. It should be entitled to the attorney fees as we should get our attorney fees for this appeal. And I don't even know who the proper court of jurisdiction is for that. But I do feel that under the integrated business agreement we have had to come in here and defend as we came in and defended the motion to vacate, which I felt was frivolous. I feel this appeal is frivolous. I understand why they're doing it. It's a lot of money. I understand it's hotly contested. But if they wish to provide and do this, and if we are the successful party, I think they should bear the attorney fees. And that was the original intent of both parties when they entered into this agreement. And I think that should be honored by the courts as it was honored by the arbitration panel. I don't know if you have any other questions. I'd be happy to answer them the best I can. Thank you. Thank you, Judge. To touch on what opposing counsel had said, to request a bystander's report from the arbitration panel likely would not go very far. The arbitration award itself goes through great lengths to discuss what evidence was presented, their interpretation of that evidence. They even go through and explain what witnesses had testified and what their statements had indicated. There is something to be said with the fact that the panel had indicated what Jerpy did not provide. They didn't say Jerpy provided this and this, so we find this. The panel stated he admitted he did not know. There was another expert that he had. And, Judge, I'm glad you brought that up. The other expert was actually our expert, the only independent expert that testified in the case. I guess I'm not even sure that I can ask that because it's outside the record, it sounds like. Is there any indication in the record that there was another expert that presented testimony that perhaps could have provided the basis for the arbitration panel's award? No, Judge. And I think that if you look into the appellee's response, the appellee would indicate that our expert agreed with what their expert had said. And that is not the case. In fact, the panel went through and explained why the appellee's who was the appellee, he was the sole expert for his side, why he was unreliable, why his damages calculations were inappropriate. Again, that's the burden on the appellee, not our burden. So if we put forth an expert, we don't have to establish virtually anything other than the fact that there were no lost profit damages. And I believe that when you read through the arbitration decision, you see that the panel did articulate we had an expert, they had an expert, however their expert did not establish the burden. With respect to and Judge, did I answer your question? I apologize. I get going sometimes. I don't think it's an answerable question, frankly. So I think I'll withdraw the question. Go ahead. So Judge, with respect to a question that was posed earlier, the contract sets forth what the law is to be applied to the arbitration. And the contract set forth that Illinois law was to be applied to the arbitration. The arbitration panel was bound by that provision of the contract. The panel, in disregarding Illinois law, committed gross error. We've established what the burdens were on each party. And the appellee did not meet his burden. The panel did not have the ability, pursuant to Illinois law, to exceed their powers. They know what the law is, they can apply the law, they can render a decision from there. However, if the appellee cannot meet his burden under Illinois law, they should not receive lost profit damages. In the event they are able to establish lost profits, albeit without reasonable uncertainty, the most that can be given to them is nominal damages. That's two fronts where the burden was excused by the panel of the appellee. And then next, we go into that the appellee has the burden of establishing the calculations that were derived. The appellee would like to say to you, well, we had two experts on the issue. It came from somewhere in those experts. No, it was the burden of the appellee to establish what those calculations were, and they failed to do so, as articulated in the arbitration award. So for that, we would ask that the esteemed panel here today vacate the arbitration award or, in the alternative, modify and correct it in line with what our calculations were as set forth in our brief. And we would also just stand on our brief for any arguments that weren't raised today. Are there any other questions, Your Honors? I don't see any. Thank you. Thank you very much for your time. Thanks to all of you. The case will be taken under advisement and a written decision shall issue.